**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD M. MINZTER, <br><br> Plaintiff, <br><br> v. <br><br> PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 21-5595 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on cross motions for summary judgment filed by Plaintiff Ronald M. Minzter ("Plaintiff") and Defendant Provident Life and Accident Insurance Company ("Provident Life" or "Defendant"). Provident Life moved for summary judgment as to Plaintiff's claims for declaratory judgment, breach of contract, and bad faith regarding Provident Life's contractual obligations under an "own-occupation" disability income insurance policy. (ECF No. 20.) Plaintiff opposed the motion and cross moved for summary judgment. (ECF No. 23.) Provident Life opposed Plaintiff's motion. (ECF No. 27.) For the reasons set forth below, Provident Life's motion for summary judgment is **GRANTED** in its entirety; Plaintiff's motion is **DENIED**.

### I.     BACKGROUND

The material facts giving rise to this action, and revealed through discovery between the parties, are set forth in the submissions of Plaintiff and Provident Life in accordance with Local

Civil Rule 56.1. (*See* Def.'s Statement of Material Facts ("Def.'s SOMF"), ECF No. 20-4; Pl.'s Statement of Material Facts ("Pl.'s SOMF"), ECF No. 23-1.).

### A.    The Policy

Plaintiff is a board-certified ophthalmologist. (Def.'s SOMF ¶ 1.) Beginning in 1992, Plaintiff's medical practice focused primarily on pediatric ophthalmology, including ophthalmic surgery. (Pl.'s SOMF ¶ 21.) Plaintiff's typical patients suffer from amblyopia or strabismus, which often requires surgery. (*Id.* ¶¶ 22-23.)

In 1993, Provident Life issued Plaintiff a disability income insurance policy (the "Policy"). (Def.'s SOMF ¶ 8; Pl.'s SOMF ¶ 1.) On his application for the Policy, Plaintiff identified his "occupation" and "exact duties" as "ophthalmic surgeon." (Def.'s SOMF ¶ 9, Ex. 1 at *26.)[1] Under the terms of the Policy, the application is incorporated into the contract between Plaintiff and Provident Life. (Pl.'s SOMF ¶ 8.)

The Policy provides total disability benefits or residual disability benefits if an insured becomes disabled from his occupation. (Def.'s SOMF ¶ 10.) Under the Policy, "your occupation" is defined as:

> [Y]our occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

(*Id.* Ex. 1 at *12.) The Policy defines "total disability" as follows:

> Total Disability or totally disabled means that due to Injuries or Sickness:
>
> 1. you are not able to perform the substantial and material duties of your occupation; and

---

[1]Page numbers preceded by an asterisk refer to page numbers atop the ECF header.

> 2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

(*Id.*) The Policy further sets forth the following definition for "residual disability":

> Residual Disability or residually disabled, during the Elimination Period, means that due to Injuries or Sickness:
>
> 1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
> 2. you have a Loss of Monthly Income in your occupation of at least 20%;
> 3. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.
>
> After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. Residual Disability or residually disabled then means that as a result of the same Injuries or Sickness:
>
> 1. you have a Loss of Monthly Income in your occupation of at least 20%; and
> 2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

(*Id.* at *17.) The Policy also details the premium payments due on the Policy and the benefits due to Plaintiff in the event of a total disability. (*Id.* at *7-11.)

**B.    Plaintiff's Disability Benefits Claim**

On December 23, 2019, Plaintiff submitted an Individual Disability Claim Form, seeking long-term disability benefits under the Policy. (Def.'s SOMF ¶ 15, Ex. 2.) Plaintiff claimed a total disability due to "significant ulnar atrophy (left) hand," and indicated that, as a result, he had not performed surgery since July 25, 2019. (Def.'s SOMF ¶¶ 16-18.) Plaintiff represented that he was

able to perform "most (nonsurgical) office duties & exams; although somewhat slower (with more effort)," and that he was unable to perform "surgery." (*Id.* ¶ 19.)

In connection with the claim, Plaintiff also submitted Attending Physician's Statements from his doctors, David Simpson, M.D. and David J. Frank, M.D., which indicated that Plaintiff suffered from a weakness in his left hand that prevented him from performing surgery. (*Id.* ¶¶ 20-26.) In addition, Plaintiff submitted a Physician Questionnaire in which he identified his job title as "ophthalmic surgeon." (*Id.* ¶ 28.) Plaintiff represented that he spent 85% of his time in the office seeing patients, 5% of his time in the operating room, 5–10% of his time performing administrative tasks, and less than 1% of his time either doing hospital rounds or working with medical students. (*Id.* ¶¶ 29-32.) Plaintiff indicated that he spent an average of 2.5 hours per week performing either strabismus surgery or naso-lacrimal duct procedures and that he occasionally performed congenital anomaly repairs and orbital timer excisions. (*Id.* ¶ 34.)

On January 8, 2020, Provident Life spoke with Plaintiff about his claim over the phone. (*Id.* ¶ 39.) Plaintiff stated that prior to July 2019, he performed surgery every other Thursday or in the event of an emergency, and that during the rest of the week he saw patients in his office. (*Id.* ¶¶ 40-41.) Plaintiff further stated that he continued treating patients in his office since July 2019. (*Id.* ¶ 42.) After being informed about the total disability and residual disability benefits under the Policy, Plaintiff advised Provident Life that he sought total disability benefits. (*Id.* ¶ 43.)

Per Provident Life's request, Plaintiff provided certain financial documentation and a summary of the Common Procedure System ("CPT") codes recorded by Plaintiff in his practice from July 1, 2018, through July 1, 2019. (*Id.* ¶¶ 47-48.) A Vocational Rehabilitation Consultant, Jean-Marie Merritt ("Merritt"), reviewed the claim and the information provided by Plaintiff. (*Id.* ¶ 49.) Merritt identified the material and substantial duties of an ophthalmologist as:

> [D]iagnosing and treating diseases of the eye; evaluating patients, performing examinations, and determining the nature and extent of an injury or disorder. An ophthalmologist determines vision loss and performs various tests, prescribes and administers medications and performs surgery, if indicated. Other duties include writing prescriptions for corrective glasses and instructing patients in eye exercises.

(*Id.* ¶ 50.) Based on Plaintiff's submissions, Merritt found that surgical procedures accounted for less than 1% of Plaintiff's billing units and 6% of the total charges billed. (*Id.* ¶¶ 52-53.) Merritt determined that duties such as office visits, office consultations, and eye exams accounted for the remainder of Plaintiff's billing units and charges. (*Id.* ¶¶ 54-55.) In a March 23, 2020, status call regarding Plaintiff's claim, Provident Life informed Plaintiff of these findings. (*Id.* ¶¶ 56-57.) Plaintiff stated that he signed the Policy as ophthalmic surgeon and that he should be reviewed as a surgeon. (*Id.* ¶ 58.) Provident Life advised Plaintiff that under the Policy it evaluated his occupation as of the date of the claimed disability but explained that it would review the information to assess if he was eligible for residual disability benefits. (*Id.* ¶¶ 59-60.)

On June 17, 2020, Plaintiff provided Provident Life with his profit and loss statements for January 2018 through June 2019 along with his tax returns from 2014 through 2019. (*Id.* ¶¶ 65-66.) Subsequently, Provident Life advised Plaintiff that it had determined he was not totally disabled as the information he provided indicated that surgical procedures accounted for less than 1% of his pre-disability production. (*Id.* ¶¶ 72-76.) Provident Life further advised that, based on the financial information it had received, Plaintiff did not have a loss of income exceeding 20% during the 90-day Elimination Period. (*Id.* ¶ 77.) But Provident Life also noted that it had not received profit and loss statements for 2020 and thus was unable to calculate Plaintiff's eligibility for residual disability benefits. (*Id.* ¶ 78.) On or about July 23, 2020, Plaintiff supplied his profit and loss statements from January 2020 through May 2020. (*Id.* ¶ 79.) In response, Provident Life

sought clarification regarding the information and additional documentation on three separate occasions. (*Id.* ¶ 80.) Through written exchanges in October 2020, Plaintiff questioned why additional documentation was necessary, and Provident Life advised Plaintiff that absent the requested financial information it could not evaluate his eligibility for residual disability benefits under the Policy. (*Id.* ¶ 82.) Provident Life also advised Plaintiff of the opportunity to submit a formal appeal. (*Id.* ¶ 83.)

On December 18, 2020, Plaintiff submitted a formal appeal of the claim determination. (*Id.* ¶ 85, Ex. 22.) The appeal was reviewed by Senior Vocational Rehabilitation Consultant, Shannon O'Kelley, who determined that the initial denial of total disability benefits was correct. (*Id.* ¶¶ 86-88, Ex. 24.) Then, on February 15, 2021, Provident Life explained that Plaintiff's claim for total disability benefits had been denied because surgery accounted for only 1% of his pre-disability billing units and 6% of charges, and that he continued performing all other duties of his occupation. (*Id.* ¶ 90.) Provident Life further stated that Plaintiff may qualify for residual disability benefits and that, if the proper information was submitted, it would review that information and pay any benefits due. (*Id.* ¶ 94.)

### C.  This Litigation

Throughout the course of this lawsuit, Plaintiff has identified himself as an ophthalmologist, board-certified by the American Board of Ophthalmology, and a pediatric ophthalmologist. (Def.'s SOMF ¶ 96, Ex. 26 at 12:8–15, 17:13–14.) The American Board of Ophthalmology does not recognize a subspecialty board certification for either pediatric ophthalmology or ophthalmic surgery. (*Id.* ¶¶ 97-100.) Rather, ophthalmology is considered a surgical specialty, as all ophthalmologists are trained in surgery. (*Id.* ¶ 101.)

Plaintiff acknowledges that, prior to July 2019, he did not limit his practice to ophthalmic surgery. (*Id.* ¶ 104.) Plaintiff, however, has also testified that the practice of eye surgery generally requires a significant amount of time outside the operating room, conducting examinations and consultations with patients. (Pl.'s SOMF ¶¶ 27-28.) Additionally, Plaintiff testified that while he typically performed surgery two days each month, a substantial aspect of his practice involved assessing whether certain patients might need surgery. (*Id.* ¶ 24.) At least one internal record from Provident Life lists Plaintiff's occupation as "EYE SURGEON." (*Id.* ¶ 15; Decl. of Eugene Killian, Jr., ("Killian Decl."), ECF No. 23-3, Ex. P, ECF No. 23-19.)

Since July 2019, Plaintiff has continued to operate his ophthalmology practice, except for surgical procedures. (Def.'s SOMF ¶¶ 106–11, Ex. 26 at 74:12–15.) Plaintiff testified that the number of surgical patients he lost due to his hand injury could have been as many as ten, or as few as five, at the time of his deposition in March 2022. (Def.'s Ex. 26 at 76:11–77:5.)

**D.    Procedural History**

Plaintiff commenced the present action against Provident Life on March 17, 2021, asserting claims for (I) declaratory judgment, (II) breach of contract, and (III) bad faith. (*See generally* Compl., ECF No. 1.) Provident Life answered. (*See* ECF No. 7.) Following discovery, Provident Life moved for summary judgment as to the three causes of action. (Def.'s Moving Br., ECF No. 20-3.) Plaintiff opposed and cross moved for summary judgment. (Pl.'s Moving Br., ECF No. 23.) Provident Life opposed Plaintiff's summary judgment motion. (Def.'s Opp'n Br., ECF No. 27.)

**II.    LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine dispute exists as to any material fact such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine [dispute] as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

## III.   **DISCUSSION**

Provident Life moves for summary judgment, arguing that, under the Policy, Plaintiff's occupation at the time of his disability claim was ophthalmologist, and while Plaintiff can no

longer perform surgery in that capacity, he is able to maintain an ophthalmology practice in all other respects, precluding total disability benefits. (*See* Def.'s Moving Br. 1-3.) Provident Life highlights that the financial and billing information provided by Plaintiff in connection with his total disability claim indicated that surgery was a minor part of Plaintiff's ophthalmology practice; Provident Life further points out that the residual benefits portion of the Policy is designed for such situations. (*See id.* at 2.) Provident Life asserts that Plaintiff's declaratory judgment and breach of contract claims should be dismissed and that Plaintiff's bad faith claim fails because there is no private right of action under N.J.S.A. § 17:29B-4 and the disability claim determination is fairly debatable. (*See id.* at 2-3.)

Plaintiff contends he is entitled to summary judgment because Provident Life insured him as an "ophthalmic surgeon" since 1993, and he is no longer able to perform surgery due to a nerve condition in his left hand, amounting to a total disability under the Policy. (*See* Pl.'s Moving Br. 1.) Plaintiff argues that even if his occupation is deemed to be an ophthalmologist (not solely an ophthalmic surgeon), his inability to perform surgery necessitates a finding of total disability under the Policy, as ophthalmology is considered a surgical specialty. (*See id.*) Plaintiff also disputes the legitimacy of the quantitative billing records analysis used by Provident Life in denying his total disability claim. (*See id.*)

### A. Declaratory Judgment and Breach of Contract (Counts I & II)

"Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" *Mem'l Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 532 (N.J. 2012) (quoting *Flomerfelt v. Cardiello*, 997 A.2d 991, 998 (N.J. 2010)). "In assessing the meaning of provisions in an insurance contract, courts first look to

the plain meaning of the language at issue." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) (citing *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008)). "If the language is clear, that is the end of the inquiry." *Id.* "[I]n the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Id.* (internal quotations and citation omitted). "When an ambiguity exists, courts should interpret the contract in accordance with the 'reasonable expectations' of the insured." *Shotmeyer v. N.J. Realty Title Ins. Co.*, 948 A.2d 600, 605 (N.J. 2008) (quoting *Proformance Ins. Co. v. Jones*, 887 A.2d 146, 152 (N.J. 2005)); *see Mem'l Props., LLC*, 46 A.3d at 532 ("The terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolved in favor of the insured.") (internal quotations and citations omitted). Still, "courts will not manufacture an ambiguity where none exists" and "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270 (internal quotations and citations omitted).

### 1.   *Plaintiff's "Occupation"*

Applying these principles, Plaintiff's assertion that his occupation under the Policy is "ophthalmic surgeon" is ultimately untenable given the plain terms of the Policy. The Policy clearly states that "your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled." (Def.'s SOMF, Ex. 1 at *12.) At the time of Plaintiff's disability, he was a medical doctor, board-certified in ophthalmology. Plaintiff performed all the duties of an ophthalmologist, including surgery, until July 2019. (*Id.* ¶¶ 1-3.) During this litigation, Plaintiff has represented that he is an ophthalmologist, certified by the American Board of Ophthalmology, and that he is a pediatric ophthalmologist. (Def.'s SOMF, Ex. 26 at 17:13-23.) Plaintiff himself admitted that at no point has he limited his medical practice

to ophthalmic surgery. (*Id.* at 100:10–101:7.) Moreover, Plaintiff acknowledges that he presently continues to treat patients as a board-certified ophthalmologist, with the exception of performing surgical procedures. (*Id.* at 75:5-18.) There is, therefore, no genuine dispute that Plaintiff's occupation in July 2019 was, and now continues to be, ophthalmologist.

Nevertheless, Plaintiff insists that because the insurance application documents are incorporated into the Policy, and because Plaintiff represented his occupation as "ophthalmic surgeon" on the Policy application, he must be considered an "ophthalmic surgeon" for purposes of assessing his total disability claim. But the notion that Plaintiff's own, unilateral representation as to his occupation in the 1993 application either conflicts with or supersedes the unambiguous terms of the Policy amounts to an overly strained reading of the contract at issue. Although integrated into the Policy, the occupation set forth in the Plaintiff's application is not a conclusive contractual definition, nor could it be given that the Policy clearly defines the term occupation elsewhere. (Def.'s SOMF, Ex. 1 at *12.) Similarly, the integration of the application into the Policy does not give rise to a contractual ambiguity. "That Plaintiff indicated in [an] insurance application[] what his occupation was at that time he applied for insurance coverage is of no consequence . . . and [Plaintiff] asks the Court to find an ambiguity where one does not exist." *Signal v. Gen. Am. Life Ins. Co.*, No. 13-169, 2014 WL 4978380, at *10 (W.D. Pa. Oct. 6, 2014). In the face of an unambiguous contractual definition, the Court "has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument." *East Brunswick Sewerage Auth. v. East Mill Assocs., Inc.*, 838 A.2d 494, 497 (N.J. Super. Ct. App. Div. 2004).

Plaintiff offers the additional argument that he is an "ophthalmic surgeon" under the Policy because that is his "recognized specialty." (*See* Pl.'s Moving Br. 23.) Plaintiff's assertion,

however, finds little support in the plain terms of the Policy and the record evidence. The Policy provides that "[i]f your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation." (Def.'s SOMF, Ex. 1 at *12.) But Plaintiff does not argue that ophthalmic surgery is a recognized medical specialty that is somehow practically or definitionally separate from ophthalmology. The American Board of Ophthalmology does not recognize any subspecialities. *See* AMERICAN BOARD OF MEDICAL SPECIALTIES, ABMS GUIDE TO MEDICAL SPECIALTIES (2022), https://www.abms.org/wp-content/uploads/2021/12/ABMS-Guide-to-MedicalSpecialties-2022.pdf. And Plaintiff cannot point to any documentation specifically indicating that Provident Life itself agreed to recognize Plaintiff's self-described specialty.[2] Nor has Plaintiff offered any evidence that he limited his medical practice to surgery. In fact, as explained above, the record indicates that Plaintiff performed all the regular duties of an ophthalmologist prior to the disability onset. Thus, Plaintiff's total disability claim is properly assessed by considering his occupational duties as an ophthalmologist.

2.    *Plaintiff's "Substantial and Material Duties"*

Under the Policy, an insured is "totally disabled" if he is "not able to perform the substantial and material duties of [his] occupation." (Def.'s SOMF, Ex. 1 at *12.) Plaintiff argues that, even if he is considered an "ophthalmologist" rather than an "ophthalmic surgeon," he is still entitled to total disability benefits because ophthalmology is a surgical specialty, and he can no longer

---

[2] Plaintiff highlights two documents in which Provident Life refers to him as either an "eye surgeon" or "ophthalmic surgeon." (*See* Killian Decl., Exs. A, P.) But neither document amounts to a binding agreement to recognize Plaintiff's purported specialty under the Policy. Indeed, the October 28, 2020 correspondence from Provident Life to which Plaintiff refers, also explains that despite Plaintiff describing his occupation as "ophthalmic surgeon," at the time he became disabled "he was engaged in an office practice, that was far greater and accounted for the majority of his duties" in comparison to his surgical practice, thus precluding total disability benefits. (*See* Killian Decl., Ex. A.)

perform surgery due to the condition of his left hand. (*See* Pl.'s Moving Br. 27-29.) Plaintiff further argues that Provident Life improperly assessed the substantial and material duties of Plaintiff's occupation by solely relying on a "billing units analysis"—a practice that Plaintiff argues the Third Circuit rejected in *McCann v. Unum Provident*, 907 F.3d 130 (3d Cir. 2018). (*See* Pl.'s Moving Br. 20-22.)

First, in evaluating Plaintiff's claim for total disability, Provident Life determined that the duties of an ophthalmologist include:

> [D]iagnosing and treating diseases of the eye; evaluating patients, performing examinations, and determining the nature and extent of an injury or disorder. An ophthalmologist determines vision loss and performs various tests, prescribes and administers medications and performs surgery, if indicated. Other duties include writing prescriptions for corrective glasses and instructing patients in eye exercises.

(Def.'s SOMF ¶ 50.) Plaintiff does not dispute that these constitute the substantial and material duties of an ophthalmologist. While surgery is certainly one of the substantial and material duties of any ophthalmologist, there are also various others, which Plaintiff still performs. Even if the Court accepts, as Plaintiff argues, that ophthalmology is a surgical specialty—that is, all ophthalmologists are trained in surgery—it does not logically follow that Plaintiff's inability to perform surgery renders him totally disabled in his occupation. Under Plaintiff's interpretation of the Policy, if an insured cannot perform one of the material duties of his occupation, he is totally disabled, regardless of whether he continues to work in that same occupation or whether he suffers a loss of income. Such an interpretation renders the residual disability benefits available under the Policy meaningless and is, therefore, unconvincing. *See J. Josephson, Inc. v. Crum & Forster Ins. Co.*, 679 A.2d 1206, 1230 (N.J. Super. Ct. App. Div. 1996) (explaining that "an insurance contract

must be interpreted by considering the agreement as a whole, and whenever possible, meaning must be given to all of its parts").

Second, Provident Life's use of a "billing units analysis" as part of its assessment of Plaintiff's total disability claim does not necessarily render its claim determination improper under the Third Circuit's *McCann* decision. In *McCann*, the Third Circuit rejected the sole use of CPT codes and billing units analysis for purposes of determining an insured's occupation and whether the insured's disability prevents performance of the substantial and material duties of that occupation. *See McCann*, 907 F.3d at 147-50 ("We will not define Dr. McCann's occupation and its 'substantial and material duties' solely by counting up billing units."). There, the court was tasked with determining whether an insured was either a diagnostic radiologist or an interventional radiologist, both of which are recognized medical specialties with separate board certifications. *Id.* The court found that the insured was an interventional radiologist given his certification in the specialty and given the nature of the insured's routine work beyond a "purely mechanical comparison" of CPT codes and billing units. *Id.* In so holding, the Third Circuit remanded the case for resolution of disputed facts as to whether the insured could perform the substantial and material duties of his occupational specialty and whether the insured qualified for residual disability

benefits under the relevant insurance policy. *Id.* at 151-52. The Third Circuit did not make a disability determination. That decision ultimately provides little guidance in the present case.[3]

Here, as noted above, and unlike *McCann*, there is no dispute that Plaintiff's occupation is either one of two recognized specialties. Plaintiff practices ophthalmology, and there is no record of a separate specialty recognition by Provident Life or board certification for "ophthalmic surgeon" such that it could constitute Plaintiff's occupation under the Policy. Moreover, the record shows that Provident Life's denial of Plaintiff's total disability claim was not based solely on an assessment of CPT codes and billing units. Although Provident Life engaged in such an analysis, Provident Life also considered Plaintiff's own description of his routine work and duties submitted in connection with his disability claim. In the Physician's Questionnaire, Plaintiff stated that he spent only about two hours per week in the operating room, approximately 5% of his time, and about 38 hours per week working in his office performing non-surgical duties. (*See* Def.'s SOMF, Ex. 2.) These representations were ultimately consistent with Provident Life's findings in its billing

---

[3] In addition to *McCann*, Plaintiff cites a number of disability benefits cases in which the insured medical doctor received total disability benefits due to an inability to perform surgery. The cases, however, are materially distinguishable and thus inapposite. Here, Plaintiff was not issued any documentation confirming he had been insured according to his self-described specialty. *Cf. Kraft v. Mass Cas. Ins. Co.*, 320 F. Supp. 2d 1234, 1235 (N.D. Fla. 2004) ("specialty letter contained . . . specific and promissory language" confirming the insured's recognized specialty as "Invasive and Interventional Cardiologist"); *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 877 (D. Del. 1994) (insurance company provided "written confirmation" that insured's "regular occupation was in the radiology sub-specialty of interventional vascular radiology"). Nor can Plaintiff show that surgery was the most prominent aspect of his ophthalmology practice prior to his disability. *Cf. Dowdle v. Nat'l Life Ins. Co.*, 407 F.3d 967, 972 (8th Cir. 2005) (noting that "[s]urgery and surgery-related care comprised 85% of [the insured's] practice"); *Groff v. Paul Revere Life Ins. Co.*, 887 F. Supp. 1515, 1516 (S.D. Fla. 1993) (insured "was one of the few surgeons in the South Florida area who performed major head and neck cancer surgery" and insured's "practice was divided by 60% surgery to 40% clinical").

and coding analysis, which showed that surgical procedures accounted for approximately 6% of Plaintiff's billing charges in the twelve months preceding his disability. (*See* Def.'s SOMF ¶ 51.)

Recognizing that surgery amounted to only a fraction of his routine work prior to July 2019 under any sort of quantitative assessment, Plaintiff argues that each disability claim "must be examined based on its own qualitative facts," and that "[h]ere, the ability to perform surgery is an essential and critical quality of being an ophthalmologist." (*See* Pl.'s Moving Br. 28.) But Plaintiff's argument that he is totally disabled as an ophthalmologist is severely undercut by both his continued practice of ophthalmology and his potential eligibility for residual disability benefits under the Policy. During his deposition, Plaintiff testified that he still treats ophthalmological conditions and remains a board-certified ophthalmologist. (*See* Def.'s SOMF, Ex. 26 at 75:13–18 ("Q. You're still a board-certified ophthalmologist. Right? A. Yes. Q. You still treat ophthalmological conditions, conditions of the eye. Correct? A. Yes.").) Plaintiff further testified that, since his disability, he had only encountered a "handful" of patients, between five and ten, that he could not treat due to his inability to perform surgery. (*See* Def.'s SOMF, Ex. 26 at 76:11-77:5.) Even Plaintiff's own expert, Dr. Jay Wisnicki, M.D., expressly acknowledged that ophthalmologists need not necessarily perform surgery in order to practice in that medical field. (*See* Killian Decl., Ex. M at 28:20-29:10.) For these reasons, the Court agrees with Provident Life that Plaintiff is not totally disabled under the Policy. Plaintiff can perform all but one of the substantial and material duties of his occupation. Provident Life's motion for summary judgment as to Plaintiff's claims for declaratory judgment and breach of contract is granted. Those claims are dismissed.

Plaintiff may be entitled to residual disability benefits, and, in fact, it would appear that Plaintiff's claim falls within the purview of that provision. This suit, however, only involves

Plaintiff's total disability claim. The Court, therefore, has no occasion to consider whether residual disability benefits would be appropriate. The record indicates that the parties disagree about the sufficiency of the financial information submitted by Plaintiff in connection with Provident Life's assessment of his eligibility for residual disability benefits. The Court offers no opinion in that regard and leaves resolution of that issue to the parties themselves, outside the context of this lawsuit.

### B.   Bad Faith (Count III)

With respect to Plaintiff's bad faith claim under N.J.S.A. § 17:29B-4, Plaintiff lacks a private right of action for any alleged violation of that statute. *See Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 264 (3d Cir. 2007) (finding that "there is no private right of action under [the New Jersey Insurance Trade Practices Act, N.J.S.A. § 17:29B-1, *et seq.*]"). Further, although New Jersey law recognizes a common law remedy for bad faith refusal of insurance benefits, Plaintiff's claim fails under the applicable standard. In *Pickett v. Lloyd's*, 621 A.2d 445 (N.J. 1993), the New Jersey Supreme Court held that "an insurance company may be liable to a policyholder for bad faith in the context of paying benefits under a policy" and that "[i]n the case of denial of benefits, bad faith is established by showing that no debatable reasons existed for denial of the benefits." *Id.* at 457. Here, the Court's finding that Plaintiff is not entitled to total disability benefits under the Policy necessarily precludes Plaintiff's bad faith claim under the common law. *See id.* at 454 (explaining that "a claimant who could not have established as a matter of law a right to summary judgment on the substantive [denial of benefits] claim would not be entitled to assert a claim for

an insurer's bad-faith refusal to pay the claim"). As such, Provident Life's motion for summary judgment is also granted as to Plaintiff's bad faith claim.[4]

**IV.    <u>CONCLUSION</u>**

For the reasons stated above, Provident Life's motion for summary judgment is granted in its entirety. Plaintiff's motion is denied.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[4] In connection with his motion, Plaintiff submits a series of exhibits purporting to demonstrate that Provident Life and its parent company Unum Group ("Unum") have a long history of improperly denying disability benefits under "own-occupation" disability insurance policies similar to the Policy. (*See* Killian Decl., Exs. B-L.) The exhibits include, among other things, bad faith verdicts in favor of insureds, previous depositions of former Provident Life executives, and news articles. Provident Life moved to strike these submissions under Federal Rule of Civil Procedure 56(c)(2), arguing that they would not be admissible at trial and that they "are nothing more than Plaintiff's misguided attempt to besmirch Provident Life and create an unjustified atmosphere of doubt about its claim processes in 2020 based upon court decisions reviewing long dead claim processes that have been regulated out of existence." (Def.'s Reply Br. 25.) Having found that Provident Life is entitled to summary judgment, the Court need not address its arguments with respect to Plaintiff's exhibits. Ultimately, the exhibits submitted by Plaintiff were immaterial to the specific arguments Plaintiff set forth in support of his legal claims, including with respect to whether he is totally disabled under the Policy.